# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| CLEAN AIR CAROLINA; NORTH CAROLINA WILDLIFE FEDERATION; and YADKIN RIVERKEEPER,<br><br>    Plaintiffs,<br><br>    vs.<br><br>NORTH CAROLINA DEPARTMENT OF TRANSPORTATION; ANTHONY J. TATA, Secretary, NCDOT; FEDERAL HIGHWAY ADMINISTRATION; JOHN F. SULLIVAN, Division Administrator, FHWA,<br><br>    Defendants. | No. 3:14-CV-338-GCM<br><br>**ORDER** |

**THIS MATTER** is before the Court on Defendants' motions to change venue (Doc. Nos. 13 & 14), Plaintiffs' Response in Opposition (Doc. No. 17), and Defendants' replies (Doc. Nos. 18 & 19). Defendants request that this case be transferred to the Eastern District of North Carolina so that it may proceed before the Honorable James C. Dever, III. For the reasons set forth below, those motions are **GRANTED**.

## I. BACKGROUND

This is an environmental case arising from the construction of the Monroe Connector/Bypass ("Bypass") in Mecklenburg and Union counties. Defendants North Carolina Department of Transportation ("NCDOT") and Federal Highway Administration ("FHWA") are attempting to build a new controlled-access toll road across approximately twenty miles of new terrain, "from US 74 near I-485 in Mecklenburg County to US 74 between the towns of Wingate

and Marshville in Union County." Record of Decision ("ROD") 1 (Doc. No. 13, Ex. 1). Plaintiffs contend that Defendants violated the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.* ("NEPA"), while reviewing matter related to the transportation project. The Complaint, filed on June 23, 2014, contains eight separate claims for relief in 282 paragraphs and broadly alleges that "the Transportation Agencies have acted arbitrarily and capriciously in issuing the Environmental Impact Statements and the Record of Decision for the proposed Toll Road." (Doc. No. 1 at 1).

This lawsuit follows an earlier challenge to this project filed on November 2, 2010 in the Eastern District of North Carolina by the same plaintiffs. *See N.C. Wildlife Fed'n v. N.C. DOT*, No. 5:10-cv-476-D (E.D.N.C.) ("*Monroe I*"). The district court in that case, Honorable James. C. Dever, III, considered cross motions for summary judgment and eventually found in favor of Defendants. *Monroe I*, No. 5:10-cv-476-D, 2011 WL 5042075 (E.D.N.C. Oct. 24, 2011). Plaintiffs appealed, and the Court of Appeals for the Fourth Circuit ruled in Plaintiffs' favor, finding that Defendants did not properly disclose assumptions underlying certain data and did not properly respond to public concerns about those assumptions and data. The Fourth Circuit vacated the district court's judgment and remanded the matter "so that the Agencies and the public can fully (and publicly) evaluate the 'no build' data." *N.C. Wildlife Fed'n v. N.C. DOT*, 607 F.3d 596, 605 (4th Cir. 2012).

After the Fourth Circuit's ruling, FHWA and NCDOT initiated new studies and analyses that resulted in a Supplemental Final Environmental Impact Statement ("SFEIS") and accompanying Record of Decision. Plaintiffs thereafter filed this second suit, this time in the Western District of North Carolina. The Complaint asserts that "[v]enue is proper in the Court pursuant to 28 U.S.C. § 1391(e)." (Doc. No. 1 at 4).

2

## II. LEGAL STANDARD

United States Code Title 28 Section 1404(a) provides, in part: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a); *see also Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court*, 134 S. Ct. 568, 581 (2013). Congress designed Section 1404(a) as a "federal judicial housekeeping measure" to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616, 636 (1964). In a motion brought pursuant to Section 1404(a), the moving party must establish (1) that the plaintiff could have brought the case in the transferee district and (2) that transfer would make the litigation more convenient for the parties and for the witnesses, and would advance justice. *See Ward v. INVISTA S.a.r.L., LLC*, 5:06-cv-40, 385 B.R. 817, 821 (W.D.N.C. 2008).

## III. DISCUSSION

As an initial matter, the Court notes that this lawsuit could have been brought in the Eastern District originally. United States Code Title 28 Section 1391(e)(1) governs venue in civil actions where the United States or any of its officers or agencies is a defendant. Under that Section, venue lies in any district where "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred . . . or (C) the plaintiff resides . . . ." 28 U.S.C. § 1391(e)(1). Defendants John Sullivan and Anthony Tata both live and work in Raleigh, which is also where the offices of the NCDOT and the North Carolina division of the FHWA are located. Additionally, a substantial part of the work and analysis done on the ROD being challenged in this case occurred in Raleigh. For these reasons, the Court finds that this case could have been brought in the Eastern District of North Carolina.

As to the parties' convenience and the interests of justice, the Western District has consistently applied an eleven-factor test. Those factors are:

> (1) the Plaintiff's choice of forum; (2) the residence of the parties; (3) the relative ease of access of proof; (4) the availability of compulsory process for the attendance of witnesses and the costs of obtaining attendance of willing witnesses; (5) the possibility of a view; (6) the enforceability of any judgment obtained; (7) the relative advantages and obstacles to a fair trial; (8) other problems which might make the litigation more expeditious and economical; (9) the administrative difficulties of court congestion; (10) the interest in having localized controversies resolved at home and the appropriateness in having litigation of a diversity case in a forum that is at home with the state law that must govern the action; and (11) the avoidance of issues involving conflict of laws.

*Am. Motorists Ins. Co. v. CTS Corp.*, 356 F. Supp. 2d 583, 585 (2005). Defendants note, and the Court agrees, that most of these factors are obviated by the fact that this is a challenge under the Administrative Procedure Act, 5 U.S.C. §§ 701-706, which will likely be decided on summary judgment. Factors 3, 4, and 5 weigh the ease of access to sources of proof, witnesses, and locations; these factors weigh neutrally because under the APA, "[t]he factfinding capacity of the district court is . . . typically unnecessary to judicial review of agency decisionmaking." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).[1] Factor 7 relates to trials, and actions under the APA typically do not proceed to trial. *See, e.g.*, *Guthrie v. Schweiker*, 718 F.2d 104, 108 (4th Cir. 1983). Factor 5 relates to the enforceability of judgments; this factor weighs neutrally because the defendants here are agencies of the United States and the State of North Carolina, and both this Court and the Eastern District will have equal ease with enforcing any judgment. Factor 11 contemplates conflict-of-laws issues, and either court will apply federal law.

### A. Judicial Economy

---

[1] The Court notes that, to the extent factfinding would be necessary, the bulk of documents and witnesses relevant to this dispute are in Raleigh.

Defendants' primary argument in favor of transfer is that the Eastern District has already familiarized itself with the "highly technical data and analyses that form the foundation of Plaintiffs' allegations," (Doc. No. 14-1 at 7) and that that court is in the best position to evaluate the merits of this second challenge to the Bypass. They note that this case challenges the same NEPA process as before, involves the same parties, and is founded on largely the same legal and factual bases. To the extent this suit is different from the first, Defendants argue that those differences largely flow from the outcome of the original suit, as the supplemental review challenged in this case was performed to address the deficiencies identified by the Fourth Circuit. This new analysis, then, must be read in light of Defendants' prior work, making the 30,683-page administrative record from the first case a substantial part of the record in this case. The Eastern District is already intimately familiar with that record, and is also in the best position to evaluate whether Defendants have complied with the Fourth Circuit's directives. Thus, they argue, there are substantial judicial efficiencies to be had in transferring this case to the Eastern District, referencing the eighth factor in the analysis.

In response, Plaintiffs argue that this case involves "almost four years' worth of new facts, including . . . 367 new exhibits . . .; two new environmental documents; an entirely new expert analysis and suite of new legal claims." (Doc. No. 17 at 12). Thus, this case presents questions of fact and law distinct from the earlier action. Moreover, they argue that there are few efficiencies in having the case decided in the Eastern District because that court's decision was subsequently vacated in full by a unanimous panel of the Fourth Circuit.

After a thorough review, the Court agrees that there are substantial efficiencies in having this case heard by the Eastern District of North Carolina because of the unique nature of the facts surrounding this case and the substantial record with which that court is already familiar.

Defendants note, and this Court agrees, that "where a party has previously litigated a case involving certain issues in one forum . . . 'a court in that district will likely be familiar with the facts of the case. As a matter of judicial economy, such familiarity is highly desirable.'" *LG Electronics, Inc. v. Advance Creative Computer Corp.*, 131 F. Supp. 2d 804, 815 (E.D. Va. 2001) (quoting *Wheeling-Pittsburg Steel Corp. v. U.S. Envtl. Protection Agency*, 1999 WL 111459, at *4 (E.D. Pa. 1999). This is especially true where that court has invested substantial time and energy in a case. *See id.*; *see also U.S. Ship Mgmt. v. Maersk Line, Ltd.*, 357 F. Supp. 2d 924, 938 (E.D. Va. 2005). The administrative record in this case is burdensome, and the pertinent facts are unique and highly technical. Becoming familiar with those facts would require substantial time and effort—time and effort that has already been expended by the Eastern District of North Carolina. It makes little sense to have this Court reexamine those facts now.

Certainly, this new challenge addresses many new facts and analyses that will prove central to resolving this dispute. But the Court agrees with Defendants that "a material portion of [the] current record derives from the information already reviewed by the Eastern District." (Doc. No. 19 at 3). For example, Defendants note that much of the Supplemental Final EIS challenged in this suit contains charts and analyses describing how conditions have changed since 2010, and indicate whether those changes altered the conclusions in the original EIS. (*Id.*) Moreover, after reviewing new data, NCDOT ultimately concluded that "in almost all cases . . . the underlying conclusions and methodologies based on the original 30,683-page record remain valid." (*Id.* at 4). Thus, an understanding of the prior studies is essential to evaluating the claims here. The mere fact that these are supplemental analyses highlights the necessity of

6

understanding the original analyses.² For these reasons, the Court finds that the eighth factor weighs heavily in favor of transfer.

**B. Plaintiff's Choice of Forum**

This Court gives great weight to the Plaintiff's choice of forum. *See, e.g.*, *Datasouth Computer Corp. v. Three Dimensional Technologies, Inc.*, 719 F. Supp. 446, 451 (W.D.N.C. 1989); *Commercial Equip. Co., Inc. v. Barclay Furniture Co.*, 738 F. Supp. 974, 976 (W.D.N.C. 1990); *BellSouth Telecommunications, Inc. v. N.C. Utilities Comm'n*, 3:05-cv-345, 2005 WL 2416204 (W.D.N.C. 2005). In fact, this Court regards that choice as "a paramount consideration in any determination of a transfer request . . . [that] should not be lightly disturbed." *Commercial Equip.*, 738 F. Supp. at 976 (quoting *Datasouth*, 719 F. Supp. at 451). In order to overcome this strong preference, "the moving party [must] demonstrate[] that the balance of convenience to the parties and witnesses and the interests of justice weigh heavily in favor of transfer." *Id.*

Defendants argue that the weight normally accorded to that choice should be diminished here because Plaintiffs previously chose to litigate this case in another forum. They cite several cases in which courts have so found. *See Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*, 03-3711 MHP, 2003 WL 22387598 (N.D. Cal. Oct. 14, 2003); *Wheeling*, 1999 WL 111459; *Gen. Elec. Co. v. Merhige*, No. 72-2237, 1972 WL 2601 (4th Cir. Nov. 20, 1972) (per curiam) (upholding district court's decision to transfer where it "seems clear that the plaintiffs have engaged in 'judge-shopping'"). Plaintiffs distinguish these cases by noting that they relate to situations where a plaintiff was first unsuccessful in its home forum and then later attempted to bring an almost identical suit in another court. Here, Plaintiffs assert that they were ultimately

---

² Plaintiffs' assertion that there are few efficiencies in transferring this case because Judge Dever's decision was vacated by the Fourth Circuit is inapposite. As Defendants correctly note, it is Judge Dever's familiarity with the facts of this case that counsel in favor of transfer.

successful in their first challenge, and that the Western District is actually their home forum. (*See* Doc. No. 17 at 12).[3] They also reassert their position that this suit is "grounded in a host of entirely new claims and facts," and that they are not simply seeking to have "two bites at the apple." (*See id.* at 13).

Rather than conclude that Plaintiffs have engaged in outright forum shopping, as Defendants assert, the Court will simply note that Plaintiffs did choose where to file the original challenge to this project. As a result of that choice, the Eastern District of North Carolina gained substantial experience and familiarity with the facts of this project and the nature of the challenge against it, making it the obvious forum to hear this second challenge. *See supra* Part III.A. (noting the substantial similarities between this challenge and the previous one despite the existence of new facts and claims). Plaintiffs' contentions that they are at home in this district and that the public here will be most affected were just as true in 2010 when Plaintiffs chose to challenge this project in the Eastern District. Those contentions do not explain why Plaintiffs wish to have a different court hear this second challenge. Thus, while this Court does not lightly disturb Plaintiffs' choice of forum, the Court finds that it is outweighed here by the substantial efficiencies in having this case heard in the Eastern District. *See Commercial Equip.*, 738 F. Supp. at 976.

### C. Residence of Parties, Local Interests, & Court Congestion

The remaining pertinent factors weigh neutrally or are similarly outweighed by the judicial economy gained by transfer. Two of the three plaintiff-conservation groups in this action are headquartered in this district, but these groups appear to have members throughout North

---

[3] Plaintiffs note that two of the three plaintiff groups in this action are headquartered in the Western District of North Carolina. (Doc. No. 17 at 11).

8

Carolina. (*See* Complaint, Doc. No. 1 at ¶¶ 18, 24, & 28). Defendants either reside or are headquartered in Raleigh. While Plaintiffs note that the project will take place in this district and that it is of great interest to the public here, both courts are in North Carolina, and this Court has previously noted the short distance between Charlotte and Raleigh, *see BellSouth*, 2005 WL 2416204, at *2. The Court also notes that much of the decisionmaking process for this project took place in Raleigh. Finally, considerations of court congestion weigh neutrally—the Western and Eastern Districts share similar amounts of time from filing to disposition, (*see* Doc. No. 14-1 at 10). If anything, the Eastern District's familiarity with this case will speed disposition.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions to change venue (Doc. Nos. 13 & 14) are **GRANTED**. This case is to be **TRANSFERRED** from the Western District of North Carolina to the Eastern District of North Carolina pursuant to 28 U.S.C. § 1404 for such further proceedings as that court may deem appropriate.

**SO ORDERED.**

Signed: November 14, 2014

Graham C. Mullen
United States District Judge